**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-2361-18T1
                            A-2362-18T3

US BANK CUST FOR PC7
FIRST TRUST AND PC7REO LLC,

     Plaintiff-Respondent,

v.

BLOCK 64, LOT 6
21 WHITE HORSE PIKE,
BOROUGH OF OAKLYN,
ASSESSED TO SAM'S
ROUTE 73, LLC,

     Defendant-Appellant.

_____

US BANK CUST FOR PC 7
FIRST TRUST AND PC7REO LLC,

     Plaintiff-Respondent,

v.

BLOCK 5.04, LOT 16
336 WHITE HORSE PIKE,
BOROUGH OF MAGNOLIA,
ASSESSED TO SAM'S

ROUTE 73, LLC,

Defendant-Appellant.

_____

Submitted October 22, 2019 – Decided July 22, 2020

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket Nos. F-008524-18 and F-010707-18.

Law Offices of Igor Sturm, attorneys for appellant (William C. MacMillan, on the briefs).

Gary C. Zeitz, LLC, attorneys for respondents (Linda Sue Fossi, on the brief).

PER CURIAM

In December 2017, plaintiff purchased tax sale certificates on two properties, one in Oaklyn and the other in Magnolia. As a private tax sale certificate holder, plaintiff was obligated to wait two years from the sale date to seek foreclosure unless it could show the properties were abandoned. N.J.S.A. 54:5-86(a). These two foreclosure actions were filed on April 23, 2018 – less than two years from the sale date – so the propriety of the commencement of these actions and the legitimacy of the judgments under review were dependent on whether the properties were abandoned, which the judge summarily found had occurred. Because we conclude the judge's disposition of that issue was at best premature, we reverse the abandonment

orders, vacate the judgments that followed, and remand for further proceedings.[1]

N.J.S.A. 54:5-86(b) not only declares that the question of abandonment is governed by N.J.S.A. 55:19-81, but also that a tax sale certificate holder may show abandonment in two general ways. First, the holder may file with the complaint "a certification by the public officer or the tax collector that the property is abandoned." N.J.S.A. 54:5-86(b). Plaintiff was unable to secure such a certification. The second path allows a court to make such a finding by considering both the plaintiff's "evidence that the property is abandoned, accompanied by a report and sworn statement by an individual holding appropriate licensure or professional qualifications," ibid., and, of course, any opposing evidential material.

In summarily moving for a declaration that the Oaklyn property was abandoned, plaintiff submitted two certifications. The first merely established plaintiff's ownership of the tax sale certificate, its unsuccessful attempt to obtain a certificate of abandonment from a municipal authority, and that Dino M. Cavalieri – a licensed building inspector – examined the property. The second was a certification in the form of a checklist executed by Cavalieri. He

---

[1] The property owner, Sam's Route 73, LLC, filed separate appeals, which we now consolidate and decide by way of this single opinion.

checked off some boxes and adding a few specific items, Cavalieri asserted that:

- the property was "in need of rehabilitation and no rehabilitation has taken place during the last six months";

- the repairs required were: "paint rear deck," "paint front trim," and "deck missing top rail";

- "[a]t least one installment of property tax remains unpaid and delinquent";

- the property is "unfit for human habitation, occupancy or use" because "electric meter not operating";

- "the condition and vacancy of the [p]roperty materially increases the risk of fire to the property and adjacent properties"; and

- there was "trash/debris" under the rear deck.

In response, Esam Salah, the sole member of Sam's Route 73, LLC, which appears to presently own the property, provided a certification that explained the convoluted litigation history in both Pennsylvania and New Jersey courts regarding a contract of sale of a restaurant business in Pennsylvania that also involved the Oaklyn and Magnolia properties in question here. Briefly, Salah asserted that, in April 2016, another entity in which he was involved contracted to sell a Pennsylvania restaurant business with a liquor license to another entity. That purchase price to be paid was

4

$1,900,000, but part of that consideration included three properties in New Jersey, two of which are the Oaklyn and Magnolia properties here in question, that would be conveyed to the seller.[2] After the closing, the seller transferred the Oaklyn and Magnolia properties to Sam's Route 73 LLC. When disputes arose after closing, however, the buyer commenced an action in Pennsylvania seeking to rescind the restaurant contract. At the time the question of abandonment arose in these tax sale foreclosure actions, that Pennsylvania action was pending undecided, leaving the ultimate ownership of the properties in question in flux.

In addition, Sam's Route 73 LLC brought an action in the Law Division seeking to discharge notices of lis pendens placed on the Oaklyn and Magnolia properties and, in December 2017, a judge entered an order granting that relief. The buyer then commenced an action in General Equity and obtained an order in March 2018 that temporarily restrained Sam's Route 73 LLC from transferring or encumbering the properties in question; that action, however, was dismissed around the time of the abandonment orders entered in these actions because the buyer was pursuing the same relief in the Pennsylvania action.

---

[2] The third property consists of vacant land also in Oaklyn.

This explanation about the other litigation was offered by Salah to show not only that the restaurant buyer was an indispensable party to these actions but also to show that whoever was ultimately going to be the owner of the properties here in question had by no means abandoned them. As Salah asserted, if Sam's Route 73 LLC ended up being the true owner – when the dust from the Pennsylvania action settled – it had no intent to abandon but instead an intent to resell those properties.

More to the abandonment point, Salah asserted that the Oaklyn property was "not in any way, shape or form abandoned." He explained the absence of occupants by referring to the uncertainty about ownership and the desire to resell that were frustrated by the notices of lis pendens and the other litigation.

Of course, the lack of occupants is alone insufficient to prove abandonment. Lack of occupancy is only the starting point, as N.J.S.A. 55:19-81 defines abandonment as "any property that has not been legally occupied for a period of six months and which meets any one of the following additional criteria" (emphasis added), to which we will shortly turn. The fact that the power was turned off was explained – as Salah asserted – by the lack of occupancy and, again, the uncertain ownership status that was a subject of litigation.

A-2361-18T1

As noted, plaintiff was required to prove not only a six-month lack of occupancy but also "any one" of other criteria listed in N.J.S.A. 55:19-81. Plaintiff appears to have relied on two of the listed criteria, one of which is that the property "is in need of rehabilitation" and that rehabilitation had not been undertaken in the six-month period, N.J.S.A. 55:19-81(a), and the other that the property "has been determined to be a nuisance by the public officer," N.J.S.A. 55:19-81(d).

Cavalieri, however, did not show that the property was in need of rehabilitation beyond his conclusory assertion except for his mention of a need for some painting of some trim in the front and the rear deck and the need to repair the deck railing. On its face those assertions are hardly convincing that the property was in need of rehabilitation; as Salah pointed out, if it were otherwise, innumerable properties in this State could be deemed abandoned.

Cavalieri also asserted – based on these minor circumstances and the presence of debris under the rear deck – that the property constituted a nuisance. That allegation is to be considered in light of N.J.S.A. 55:19-82, which defines a property to be a nuisance if any one of five conditions exist:

> a. The property has been found to be unfit for human habitation, occupancy or use . . .;
>
> b. The condition and vacancy of the property materially increases the risk of fire to the property and adjacent properties;

A-2361-18T1

c. The property is subject to unauthorized entry leading to potential health and safety hazards; the owner has failed to take reasonable and necessary measures to secure the property; or the municipality has secured the property in order to prevent such hazards after the owner has failed to do so;

d. The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds have created potential health and safety hazards and the owner has failed to take reasonable measures to remove the hazards; or

e. the dilapidated appearance or other condition of the property materially affects the welfare, including the economic welfare, of the residents of the area in close proximity to the property, and the owner has failed to take reasonable and necessary measures to remedy the conditions.

As noted, no municipal official ever took the position or advised the owner of any of the conditions that might support such a finding. Moreover, even though Cavalieri checked boxes on his form certification to suggest some of these conditions were present, for the most part, his certification only presents conclusions that parrot the statutory language. The only actual detail Cavalieri provided suggested that the concerns were minor and could have been quickly remedied if they were known or reported.

In any event, we need not determine whether, on its face, Cavalieri's certification sufficiently supported a claim of abandonment. His assertions, both general and specific, were disputed by Salah's certification. The judge

8                                                    A-2361-18T1

should have conducted an evidentiary hearing on the issues presented by the parties' competing certifications rather than decide the issue by concluding that it was in defendant's best interests to lose the property; the judge's entire rationale for summarily deciding the abandonment issue against defendant is the following:

> So here's what I'm going to do. I am going to grant your motion to have the property [in Oaklyn] declared vacant and abandoned. And that's – this – after this one and the next one in July [referring to the similar motion to deem the Magnolia property abandoned], unfortunately, the plaintiff and the defendant in the other case [presumably referring to the Pennsylvania suit] are going to have less to fight about because the properties are going to be really taken out of the picture altogether. Plaintiff [sic: defendant or the buyer of the restaurant property?] should have thought about that if they wanted to preserve their rights. They could have redeemed this property in the hopes that if they win their lawsuit [again, presumably the Pennsylvania lawsuit] they get the three properties back, and there would have been something then to – to retrieve. Right now I'm taking one of the three away, pretty much, by doing it this way.

We find this rationale to be wholly disconnected from the issues presented.

Whatever the judge's holding meant, it had nothing to do with the condition of the property. As we have observed in reviewing the parties' allegations concerning the Oaklyn property, there were factual issues to be

developed and examined at an evidentiary hearing.[3]  The declaration of abandonment in that case was, at best, premature.  Because that determination is pivotal to whether plaintiff was entitled to seek foreclosure when it did, all that followed must be vacated.

We lastly note that defendant argues in both appeals that the judge erred in determining that the restaurant buyer was not an indispensable party.  We deem it appropriate not to presently reach that issue because the status of the Pennsylvania suit may have changed during the pendency of this appeal and such change might impact any such ruling.  The need for that party's joinder should be reconsidered following today's remand and in light of the current status of the other litigation.

* * *

To summarize, the final judgments in both matters are vacated, the orders determining the properties abandoned in both cases are reversed, and the matters remanded for evidentiary hearings on the question of abandonment

---

[3]  Defendant did not oppose the abandonment motion on the Magnolia property in the second foreclosure action.  Cavalieri's assertions regarding that property were similar to those asserted about the Oaklyn property.  And, although undisputed – because the judge's abandonment ruling in the Oaklyn matter demonstrated the futility of any opposition – we conclude as well that the abandonment determination in the Magnolia matter was also premature.

and for reconsideration of whether the restaurant buyer should be joined as a party.

Vacated in part, reversed in part, and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION